UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN PATRICK BURGDORF,

                Petitioner,                Case No. 1:14-cv-1179

v.                                        Honorable Janet T. Neff

MARY BERGHUIS,

                Respondent.

_____/

## OPINION

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## **Factual Allegations**

Petitioner Ryan Patrick Burgdorf presently is incarcerated with the Michigan Department of Corrections at the West Shoreline Correctional Facility.  Petitioner's conviction arises from his sexual assault and penetration of his 14-year-old step-daughter on June 26, 2005.  On August 17, 2005, Petitioner pleaded *nolo contendere* to third-degree criminal sexual conduct (CSC III), in exchange for the dismissal of the charge of first-degree criminal sexual conduct (CSC I) and a minimum sentence not exceeding eight years.  *See Burgdorf v. Bell*, No. 2:07-cv-13418 (E.D. Mich. July 8, 2007) (Op. & Ord., docket #11 at 1-2, Page ID##253-54).  He was sentenced on January 13, 2006, to a prison term of eight to fifteen years.

Petitioner previously filed two habeas petitions.  The first, *Burgdorf v. Bell*, No. 2:07-cv-13418 (E.D. Mich.) was denied on July 8, 2007.  Petitioner's second petition, *Burgdorf v. Larson*, No. 2:13-cv-11384 (E.D. Mich.), was transferred to the Sixth Circuit as a second petition.  *See id.* (docket #3).  The instant petition, however, is not second or successive, as Petitioner seeks relief, not from his judgment of conviction, but from the Michigan Parole Board's February 7, 2014 decision to deny him parole.

Petitioner contends that, by virtue of state law governing parole procedures, he has a liberty interest in his parole.  As a result, he asserts that the denial of parole violated his right to due process.  Petitioner also contends that prisoner Robert Paul Maxwell was similarly situated with Petitioner, yet Maxwell was released on parole on July 29, 2014.  Petitioner asserts that the differing treatment accorded to Maxwell violated Petitioner's right to equal protection under the Fourteenth Amendment.  In addition, Petitioner argues that, during his incarceration, he was subjected to sexual

touching by a physician and was denied necessary medical care.  He therefore contends that he has been subjected to cruel and unusual punishment under the Eighth Amendment.

### Discussion

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

I.    Due Process

Plaintiff claims that he has a liberty interest in his parole and that his right to due process was violated when he was denied parole without substantial and compelling reasons for departing from the parole guidelines.  To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law.  *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006).  Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole.  There is no constitutional or inherent

right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Plaintiff has served his 15-year maximum sentence, he has no reasonable expectation of liberty. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The Michigan Parole Board's

failure or refusal to consider Plaintiff for parole, therefore, implicates no federal right.   In the absence of a liberty interest, Plaintiff fails to state a claim for a violation of his procedural due process rights.

II.    Equal Protection

Petitioner argues that he was deprived of his right to equal protection when he was denied parole while another similarly situated prisoner was granted parole.  The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws."   U.S. CONST., amend XIV; *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985).  The Equal Protection Clause does not forbid all classifications, but simply prevents governmental decision makers from treating differently persons who are similarly situated in all relevant respects.  *Cleburne*, 473 U.S. at 439; *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920); *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570, 574 (6th Cir. 2002) (the Equal Protection Clause "protects against arbitrary classifications, and requires that similarly situated persons be treated equally").

"Strict scrutiny of an alleged equal protection violation is only employed if the classification at issue discriminates on the basis of a suspect criterion or impinges upon a fundamental right." *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000).  The Michigan legislation does not implicate a fundamental right because there is no constitutional right to release on parole. *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979); *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994).  Further, Petitioner does not indicate that he was treated differently on the basis of race or other suspect classification.  *See City of Cleburne*, 473 U.S. at 440.  Moreover, prisoners are not a suspect class.  *Hadix*, 230 F.3d at 843; *Wilson v. Yaklich*, 148 F.3d

596, 604 (6th Cir. 1998); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997); *see also Zehner v. Trigg*, 133 F.3d 459, 463 (7th Cir. 1997) (dismissing as "completely unsupported" the idea that prisoners are a suspect class). Thus, in order to establish an equal protection violation, Petitioner must show that the Michigan scheme differentiates between similarly situated persons and is not rationally related to any conceivable legitimate governmental purpose. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Hadix*, 230 F.3d at 843.

Plaintiffs' equal protection claim fails because the classification survives rational basis review.

> [U]nder rational basis review, . . . the classification need not be the most narrowly tailored means available to achieve the desired end. . . .   The statute need not be the best possible reaction to the perception, nor does the perception itself need to be heavily buttressed by evidentiary support.  It is enough that the perceived problem is not obviously implausible and the solution is rationally suited to address that problem.

*Zehner*, 133 F.3d at 463 (rejecting prisoners' argument that 42 U.S.C. § 1997e(e) violates equal protection by limiting relief which may be sought by prisoners). In addition, the Court's resolution of this case must be made in light of the constant admonition by the Supreme Court that the problems of prison administration are peculiarly for resolution by prison authorities and their resolution should be accorded deference by the courts. *See Washington v. Harper*, 494 U.S. 210, 224 (1990); *Turner v. Safley*, 482 U.S. 78, 84-96 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jones v. N.C. Prisoners' Labor Union*, 433 U.S. 119, 125-26 (1977).

The similarly situated inquiry focuses on whether Petitioner is similarly situated to another group for purposes of the challenged government action. *More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993); *accord Reynolds v. Sims*, 377 U.S. 533, 565 (1964) (equal protection requires

-6-

"uniform treatment of persons standing in the same relation to the governmental action questioned or challenged").  As stated by the First Circuit,

> The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. Much as in the lawyer's art of distinguishing cases, the 'relevant aspects' are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.

*Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 19 (1st Cir. 1989).  *See also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (holding that, in the employment context, to show that others are similarly situated, a plaintiff must demonstrate that the comparables he proffers are similar in all relevant respects).  "The initial discretion to determine what is 'different' and what is 'the same' resides in the legislatures of the States."  *Plyler v. Doe*, 457 U.S. 202, 216 (1982).

Here, Petitioner argues that he was similarly situated with Robert Paul Maxwell, who was granted parole.  According to the documents upon which Petitioner relies for his claim, Maxwell indeed was similarly situated to Petitioner in a number of respects:  both prisoners pleaded guilty or *nolo contendere* to CSC III involving a person 13 to 15 years of age in exchange for a dismissal of a CSC I charge; both prisoners were on probation or parole at the time of their offenses; both had prior assaultive convictions; both prisoners had the same mental health scores; both had the same mitigating scores; and both were long-term prisoners, having served nine years (Maxwell) and eight years (Petitioner) at the time of the parole consideration.  And Maxwell had an additional negative factor – his misconduct history – that Petitioner did not share.  Moreover, because of his misconduct history, Maxwell's total score placed him at an average probability of parole, whereas Petitioner was placed at a high probability of parole.  (*See* Attach. B-1 to B-2 to Pet., Parole Guidelines Scoring Sheets, docket #1-1, Page ID##17-24.)

Petitioner, however, had other variables that were different from Maxwell's. Petitioner had more past felony convictions, including a conviction for aggravated stalking, and he had more assaultive convictions. Petitioner was scored based on a finding of "force causing a serious injury," whereas Maxwell was scored only on "some use or threat of force/injury." (*Id.*, Page ID##17, 21.) Maxwell also received a more positive score on the age variable because he was older than Petitioner. (*Id.* at 18, 22.)

"'The purpose of parole is to keep a prisoner in legal custody while permitting him to live beyond the prison enclosure so that he may have an opportunity to show that he can refrain from committing crime.'" *People v. Gregorczyk*, 443 N.W.2d 816, 821 (Mich. Ct. App. 1989) (citation omitted). Protection of public safety is a stated purpose of Michigan's parole statutes. *Hopkins v. Mich. Parole Bd.*, 604 N.W.2d 686, 689 (Mich. Ct. App. 1999) ("First and foremost, [the Parole Board] may not grant a prisoner liberty on parole until it 'has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety'") (quoting MICH. COMP. LAWS § 791.233(1)(a)). Preventing the early release of potentially violent inmates is a legitimate governmental interest. *See Wottlin v. Fleming*, 136 F.3d 1032, 1037 (5th Cir. 1998) (affirming rejection of equal protection challenge raised by § 2241 petitioner; Bureau of Prisons rule which provided that inmates having prior convictions for homicide, forcible rape, robbery, or aggravated assault were not eligible for early release was "rationally related to the legitimate governmental interest of preventing the early release of potentially violent inmates").

There are numerous factors and considerations used by the Michigan Parole Board in determining whether parole is appropriate. Consideration of the nature of the particular offense

of an inmate is clearly rational and not arbitrary. In the instant case, the differences between

Maxwell and Petitioner rationally could have supported the difference in parole outcomes.

Moreover, the Supreme Court recently has recognized that rational basis scrutiny is

not properly applied to employment decisions and other discretionary decisionmaking:

> There are some forms of state action, however, which by their nature involve
> discretionary decisionmaking based on a vast array of subjective, individualized
> assessments. In such cases the rule that people should be "treated alike, under like
> circumstances and conditions" is not violated when one person is treated differently
> from others, because treating like individuals differently is an accepted consequence
> of the discretion granted. In such situations, allowing a challenge based on the
> arbitrary singling out of a particular person would undermine the very discretion that
> such state officials are entrusted to exercise.

*Engquist v. Oregon Dep't of Agr.*, 128 S. Ct. 2146, 2154 (2008). Parole considerations are the type

of discretionary decisions discussed in *Engquist* that typically are "subjective and individualized,

resting on a wide array of factors that are difficult to articulate and quantify." *Id.* Discretion to

grant parole is squarely lodged with the Parole Board. *See Sweeton*, 27 F.3d at 1164-65 (noting the

broad authority of the Michigan Parole Board to make discretionary decisions). Applying *Engquist*,

even an arbitrary parole decision would not violate Petitioner's equal protection rights. *See Franks*

*v. Rubitschun*, No. 5:06-cv-164, 2010 WL 1424253, at **6-7 (W.D. Mich. Mar. 31, 2010); *see also*

*Barnes v. Mich. Dep't of Corr.*, No. 2:13-cv-270, at *6 (W.D. Mich. Nov. 18, 2013).

III.     Eighth Amendment

Petitioner asserts that he was sexually touched by a treating physician while in prison. He also asserts that he was denied unspecified medical care.  For both reasons, he alleges that he is incarcerated in violation of the Eighth Amendment.

It is well established that requiring an inmate to serve his entire sentence does not constitute cruel and unusual punishment.  *See Preston v. Hughes*, No. 97-6507, 1999 WL 107970, at *2 (6th Cir. Feb. 10, 1999); *Smith v. Heyns*, No. 12-11373, 2013 WL 3944474, at *9 (E.D. Mich. July 21, 2013).  A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'"  *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)).   The denial of parole or parole consideration is a disappointment rather than a punishment of cruel and unusual proportions. *See Carnes v. Engler*, No. 03-1212, 2003 WL 22177118, at *3 (6th Cir. Sept. 19, 2003)  (denial of parole does not implicate the Eighth Amendment); *Smith*, 2013 WL 3944474, at *9 (citations omitted).  As a consequence, Petitioner is not entitled to habeas relief on the theory that he is being incarcerated in violation of the Eighth Amendment.

To the extent that Petitioner wishes to seek damages under the Eighth Amendment from the physician who assaulted him or from other health care providers, his claims are not cognizable on habeas review.  Where a prisoner is challenging the very fact or duration of his physical imprisonment and the relief that he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a petition for writ of habeas corpus.  *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).  However, habeas corpus is not available to prisoners who are complaining of the conditions of their confinement or mistreatment

during their legal incarceration. *See Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004)*; Lutz v. Hemingway*, 476 F. Supp. 2d 715, 718 (E.D. Mich. 2007).  The Eighth Amendment claims raised by Petitioner involve conditions of confinement and "do not relate to the legality of the petitioner's confinement, nor do they relate to the legal sufficiency of the criminal court proceedings which resulted in the incarceration of the petitioner." *Id.* (quoting *Maddux v. Rose*, 483 F. Supp. 661, 672 (E.D. Tenn. 1980)).  An inmate like Petitioner may, however, bring claims that challenge the conditions of confinement under 42 U.S.C. § 1983.  *Id.*; *see also Austin v. Bell*, 927 F. Supp. 1058, 1066 (M.D. Tenn. 1996).  Because Petitioner's Eighth Amendment allegations involve the conditions of his confinement, his allegations "fall outside of the cognizable core of habeas corpus relief."  *See Hodges v. Bell*, 170 F. App'x 389, 393 (6th Cir. 2006).

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service.  It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted.  *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat

anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

   The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

   The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:   December 5, 2014              /s/ Janet T. Neff
                                       Janet T. Neff
                                       United States District Judge

-13-